UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| ROYALE ROBINSON ) | Case No. 05-10207-SSM |
| ) | Chapter 13 |
| Debtor ) | |
| ) | |
| ROYALE ROBINSON ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Adversary Proceeding No. 08-1347 |
| ) | |
| EDUCATIONAL CREDIT MANAGEMENT ) | |
| CORPORATION ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

This is an action by a chapter 13 debtor to discharge approximately $143,000 in student loan debt owed to Educational Credit Management Corporation. A trial was held on March 26, 2009. The plaintiff was present in person and represented herself. The defendant appeared by its attorney of record. For the reasons stated, the court, although sympathetic to the debtor's situation, concludes that she has not met the high standard required in this Circuit discharging student loans on the ground that payment would constitute an undue hardship. For that reason, discharge of the student loans must be denied. This opinion constitutes the court's findings of fact and conclusions of law under Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure.

1

Background and Findings of Fact

The plaintiff-debtor, Royale Robinson, filed a voluntary petition in this court on January 21, 2005, for relief under chapter 7 of the Bankruptcy Code.[1] The case was subsequently converted to chapter 13, and a plan was confirmed that projected a dividend to unsecured creditors of approximately 35 cents on the dollar. After the debtor was diagnosed with cancer and was unable to continue making her plan payments, she converted her case to chapter 7. Because she was ineligible for a chapter 7 discharge—having received a discharge in a chapter 7 case filed within six years of the present case—she moved to reconvert her case to chapter 13 and to be issued a hardship discharge under § 1328(b) of the Bankruptcy Code. The motion was granted, and she received a hardship discharge on February 19, 2009.

Among the liabilities listed on the debtor's schedules is a debt for student loans in the amount of $50,000 held by "Access Group/Education. Mgmt Grp/Key Bank and its Assigns." The debtor incurred that debt, 18 student loans to be exact, while obtaining post-graduate degrees from 1996 to 2002. The debtor filed the present action against Educational Credit Management Corporation ("ECMC") on August 27, 2008, seeking an undue hardship discharge of those student loan debts under § 523(a)(8) of the Bankruptcy Code. ECMC filed an answer

---

[1] This was the fifth bankruptcy case filed by the debtor in this court within an 18 month period. The first (Case No. 03-13538-SSM), was filed on July 30, 2003, under chapter 13 but was subsequently converted to chapter 7, and the debtor was granted a discharge on April 30, 2004. Her next case, a chapter 13 (Case No. 04-12693-RGM), was filed June 22, 2004, and was dismissed on July 31, 2004, for failure to attend the meeting of creditors. The third case, also a chapter 13 (Case No. 04-13502-RGM), was filed August 17, 2004, and was dismissed on September 24, 2004, with prejudice to refiling for 120 days. The fourth, another chapter 13 (Case No. 04-14171-SSM), was filed October 6, 2004, and was dismissed December 14, 2004, because the filing was within the prohibited period.

on requesting dismissal of the debtor's complaint and a declaration that the student loan debts are non-dischargeable under § 523(a)(8) of the Bankruptcy Code.

ECMC had filed a proof of claim in the debtor's case on October 12, 2005, more than five months after the deadline for filing proofs of claim had passed, in the amount of $143,158. Because the proof of claim was not timely filed, the chapter 13 trustee did not make any distributions to ECMC under the debtor's confirmed plan during the pendency of her case. As of September 25, 2008, the balance due on the loans was $175,986.

The debtor is a 55 year old woman who holds a Juris Doctor (J.D.) degree from Syracuse University, which she received in 1999, and a Master of Laws (LL.M.) in Taxation and Employment Benefits from Georgetown University Law Center, which she received in 2002. She testified that she has not been admitted to the bar in any state. The debtor has no dependents. Since 2002, she has experienced financial difficulties due to unemployment and medical treatment for cancer. Her schedules of monthly income and expenses (Schedules I and J) at the time the petition was filed reflected gross income of $2,200, take home pay of $1,337, and expenses of $1,206, not including any student loan payments. Currently, however, her only sources of income are unemployment benefit payments of $200 per week and $200 in food stamps each month. Her estimated current monthly expenses total $1,879, including $1,079 per month in rent but not including student loan payments, and the debtor does not expect any reduction in expenses over the coming year.

Despite attempts to obtain work in the profession for which she studied, the debtor has held only low paying jobs since receiving her degrees including positions as an airport baggage screener and ramp operator at Dulles International Airport and as a bank teller. In addition, from

2003 to 2006, the debtor lived in various homeless shelters, and she is currently behind on her rent and has been sued for unlawful detainer. She has been unemployed since 2007, when she was diagnosed with cancer and had to undergo three surgeries. The debtor received short-term disability benefits from her employer from April 2007 until September 2007 at her full salary, and was then transferred to long-term disability payments of $1,500 per month until July 2008. At no time since 2003 has the debtor's gross annual income exceeded $32,200.[2] In addition, she is still in treatment for cancer and has been prescribed medication, chemotherapy, and emotional counseling. Although the debtor is actively seeking employment, she testified that any job would have to be on a trial basis due to her medical condition. The debtor's student loans became due in 2003, during the pendency of her prior chapter 7 case, and she has made no payments, which she asserts is because she has been in bankruptcy since the loans became due.

After the debtor filed the present complaint to discharge her student loan debts, ECMC, through its attorney, notified the debtor that she appeared to qualify for several alternative repayment programs through the William D. Ford Direct Loan Program. One program, the Income Contingent Repayment Plan, is based on the borrower's adjusted gross income and family size. *See* 34 C.F.R. § 685.209. Under the plan, the monthly payment amount is based on the debtor's adjusted gross income from the prior year, and the annual amount paid is twenty percent of the difference between the debtor's adjusted gross income and the federal poverty guidelines for her household size. *Id.* § 685.209(a)(2)-(3). If the debtor's income is below the

---

[2] The debtor has had a bankruptcy case pending for all but 121 days since mid-2003. Based on the debtor's tax returns for the tax years 2003 to 2007, admitted as Defendant's Exhibit H, her gross annual income for those years are as follows: $32,194 in 2003; $19,027 in 2004; $27,481 in 2005; $27,606 in 2006; and $22,919 in 2007.

federal poverty guidelines, as it currently is, then the required monthly loan payments would be $0, but she would not be considered in default on the obligation. *Id.* The term of the program is 25 years, *Id.* § 685.209(c)(4), with monthly payments adjusting each year, *Id.* § 685.209(a)(5), and at the end of the term, any remaining debt would be discharged. *Id.* § 685.209(c)(4)(iv). The debtor testified that she did not consider the program helpful to her because she would remain liable on the debts, which—because they would be reflected on her credit report—would prevent her from obtaining affordable housing.

<u>Conclusions of Law & Discussion</u>

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. A determination as to the dischargeability of a debt is a core proceeding in which a final judgment or order may be entered by a bankruptcy judge. 28 U.S.C. § 157(b)(2)(K). Venue is proper in this district. 28 U.S.C. § 1409(a). The defendant has been properly served and has appeared generally.

II.

Student loan debts are presumptively non-dischargeable in bankruptcy. § 523(a)(8), Bankruptcy Code. However, a student loan debt may be discharged if "excepting such debt from discharge...would impose an undue hardship on the debtor and the debtor's dependents." *Id.* A debtor seeking a discharge of student loan debts has the burden of proving that repayment of the debts would pose an undue hardship by a preponderance of the evidence. *Spence v. Educ. Credit Mgmt. Corp. (In re Spence)*, 541 F.3d 538, 543-44 (4th Cir. 2008); *Educ. Credit Mgmt. Corp. v.*

*Mosko (In re Mosko)*, 515 F.3d 319, 323 (4th Cir. 2008); *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 533 F.3d 393, 400 (4th Cir. 2005).

A.

In determining whether the repayment of student loan debts would impose an undue hardship, the majority of circuits, including the Fourth Circuit, apply the test first articulated by the Second Circuit in *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 831 F.2d 395, 396 (2d Cir. 1987). *See, Frushour*, 533 F.3d at 400 (explicitly adopting the *Brunner* test in the chapter 7 context); *Ekenasi v. Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541 (4th Cir. 2003) (applying the *Brunner* factors in the chapter 13 context). The *Brunner* test requires the debtor to establish:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. In this case, ECMC does not dispute that the debtor satisfies the first factor of the *Brunner* test. Thus, the issue here is whether the debtor has demonstrated, by a preponderance of the evidence, the second and third prongs of the test.

B.

The second *Brunner* factor, that the "state of affairs is likely to persist for a significant portion of the repayment period of the student loan," requires the debtor to show "not only...current inability to pay but also...additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time." *Brunner*, 831 F.2d at 396. This prong has been described of as "the heart of the *Brunner* test," as it is the factor that

6

"most clearly reflects the congressional imperative that the debtor's hardship must be more than the normal hardship that accompanies any bankruptcy." *Frushour*, 433 F.3d at 401; *Spence*, 541 F.3d at 544. The Fourth Circuit has determined that the second prong of the *Brunner* test is "a demanding requirement" necessitating the existence of "a certainty of hopelessness" such that the debtor will not be able to repay the student loans. *Id*; *Spence*, 541 F.3d at 544. Put another way, it is the rare debtor who satisfies this factor. *Id.*

In the present case, the debtor testified that she was diagnosed with cancer in 2007 and that she had a total of three surgeries for the cancer in 2007 and 2008. She also testified that she is still being treated for her cancer with medication and prescriptions for chemotherapy, but she is unwilling to follow through with the chemotherapy treatment because she needs a stable housing environment, which she claims she does not currently have. The debtor did not present any further evidence regarding her medical diagnosis, her current condition, her chances for recovery, or the effect of the diagnosis on her ability to be employed in the future.[3]

The court is unable to find that the debtor has shown, by a preponderance of the evidence, the existence of additional circumstances which indicate that her current inability to pay her student loans will continue for a significant portion of the repayment period. While the court is sympathetic to the debtor's current situation, being diagnosed with cancer, without more,

---

[3] To be fair, one of the problems with the application of the *Brunner* test is that it places something of an unfair evidentiary burden on debtors who—if they satisfy the first prong—almost by definition do not have the financial resources to obtain the expert testimony that would be needed to satisfy the second prong. That is, because a debtor who does not currently have sufficient income to pay even her basic living expenses, is, as a practical matter, debarred from presenting the type of expert testimony (such as from her treating doctor) that would be required for her to establish that her prognosis for recovery is poor. At the trial, the debtor did offer into evidence a letter from her doctor regarding her medical condition; however, because the letter was clearly hearsay, the court sustained ECMC's objection to its admission.

does not necessarily mean that the debtor cannot take advantage of the two law degrees she obtained and the excellent education she received. The debtor has provided no evidence, other than her own testimony, that her health problems will prevent her from returning to work, either part-time or full-time, nor has she offered evidence of the "certainty of hopelessness" of her circumstances that the Fourth Circuit requires.[4]

C.

The third prong set forth in *Brunner* requires that the debtor show that she "has made good faith efforts to repay the loans." *Brunner*, 831 F.2d at 396. In the Fourth Circuit, the good faith inquiry requires an examination of the debtor's "efforts to obtain employment, maximize income, and minimize expenses." *Frushour*, 433 F.3d at 402 (citing *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 564 (7th Cir. 2003)) (internal quotation marks omitted); *see also Spence*, 541 F.3d at 544; *Mosko*, 515 F.3d at 324. Second, the debtor's hardship must be due to factors over which she had no control. *Id.*; *see also Spence*, 541 F.3d at 544; *Mosko*, 515 F.3d at 324. The final consideration is the debtor's efforts to pursue loan consolidation options. *Id.*; *see also Spence*, 541 F.3d at 544; *Mosko*, 515 F.3d at 324.

In the present case, the debtor's hardship is clearly not of her own making. And while it is true that she has made no payments on the student loans, it appears that she fell into financial distress (and filed her first bankruptcy case) at or shortly around the time that the first payments would have become due on the student loans. Her confirmed plan in the current case did provide

---

[4] Should the debtor later obtain medical evidence showing that she could never be employed due to her diagnosis, she may seek relief under Rule 9024, Federal Rules of Bankruptcy Procedure, which incorporates Rule 60, Federal Rules of Civil Procedure, from the judgment dismissing her complaint.

for ECMC, and it would have received some payment but for its failure to file a timely proof of claim.[5]

Nevertheless, the debtor has not demonstrated a good faith effort to maximize her income. While her lack of employment for the past two years is adequately explained by her cancer diagnosis and treatment, there is no real explanation for her why, armed with an LL.M. in Taxation and Employment Benefits from a prestigious law school, she did not work in the field for which she was trained but only in substantially less lucrative jobs such as a baggage screener and a bank teller. The debtor testified that since becoming unemployed, she has sought employment by going to a local workforce center, but she has not sought assistance from the career center at Georgetown University Law Center in finding employment in the legal field. Despite being highly educated and holding marketable degrees and skills, the debtor has seemingly made no efforts to take advantage of those skills in order to maximize her income.

Finally, the debtor did not seriously pursue loan consolidation or repayment plans. The Fourth Circuit has stated that although not dispositive, efforts to seek out loan consolidation or repayment options "illustrate[] that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances." *Frushour*, 433 F.3d at 402. Indeed, requests for loan deferments and forebearances are insufficient to demonstrate good faith when they are not followed by payments or attempts to work out repayment plans. *Spence*, 541

---

[5] The debtor did not, to be sure, take advantage of her right to file a proof of claim on ECMC's behalf when it failed file its own proof of claim. Fed.R.Bankr.P. 3004. At the same time, the court recognizes that a *pro se* debtor—unlike an attorney who would receive notice through the court's Case Management/Electronic Case Filing system of any proofs of claim filed in the case—would learn of a creditor's failure to file a proof of claim only if he or she came into the clerk's office to review the claims register, since there is no requirement that proofs of claim be served on debtors.

F.3d at 545; *Mosko*, 515 F.3d at 326-37. Further, the failure to take advantage of loan repayment programs for which the debtor is eligible is indicative of whether "the debtor takes her loan obligations seriously," and is an important component of the analysis of the third *Brunner* factor. *Frushour*, 433 F.3d at 402-403; *see also Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 682-83 (6th Cir. 2005).

Here, the debtor offered no evidence of attempts to consolidate her loans or seriously consider the Income Contingent Repayment Plan (ICRP) under the William D. Ford Direct Loan Program. There is appears to be no dispute that the debtor is eligible for the program, which would permit her to pay zero dollars per month while her income is below the federal poverty level, with any remaining balance administratively discharged after the 25-year repayment period. *See* 34 C.F.R. § 685.209.

The debtor's sole reason for refusing to consider the ICRP was that such a program was not helpful to her because the debt would still be reflected on her credit report. According to the debtor, landlords look at credit report in determining whether to accept rental applications, and the amount of the debt she owes would almost certainly result in her application being turned down. And without the ability to obtain affordable and stable housing, she was unwilling to undergo the chemotherapy necessary to treat her cancer. For that reason, she argues, her continued liability on the student loan debt would constitute a hardship even if she were not currently required to make payments.

This kind of hardship, however, is not the hardship contemplated by § 523(a)(8) and *Brunner*. That "undue hardship" is the hardship the *payments* would cause the debtor, not the collateral effect of having the debts appear on her credit report. As the District Court noted in

10

*Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, the inquiry for the first prong of the test is whether "the necessity of *making the monthly loan payment* will cause [the debtor's] standard of living to fall below a 'minimal' level." 46 B.R. 752, 754 (S.D. N.Y. 1985) (emphasis added). Here, the debtor's justification in refusing the ICRP loan repayment program is not that the monthly payments of zero would pose a hardship (which indeed it could not), but that the cumulative debt on her credit report poses a hardship on her ability to obtain affordable and stable housing. While an unfortunate situation, the debtor's justification is insufficient for rejecting a program that would allow her to fulfill her loan obligations in a more reasonable and manageable way. *See, e.g., Frusour*, 433 F.3d at 403.

<u>Conclusion</u>

As the Fourth Circuit has noted, "Congress, in enacting § 523(a)(8), set a high bar for a debtor seeking to discharge government-guaranteed educational loans." *Frushour*, 433 F.3d at 403. While the debtor's situation is compelling, the Fourth Circuit has refused to allow debtors to discharge their student loan obligations in cases where the circumstances were similar. *See e.g.*, *Spence*, 541 F.3d at 542, 544 (denying undue hardship discharge of $161,000 in student loan debts to debtor in her late 60s suffering from diabetes and high blood pressure); *Mosko*, 515 F.3d at 322, 327 (no undue hardship discharge for debtors with one dependent whose combined student loan debts totaled $120,573 despite fact that husband suffered from excessive daytime sleepiness which limited his employment prospects); *Frushour,* 433 F.3d at 396-97, 404 (no undue hardship for single parent debtor with one dependent and $12,149 in student loans); *Ekenasi*, 523 F.3d at 543 (undue hardship discharge more than two years before debtor's

scheduled completion of chapter 13 plan premature despite $89,418 in student loan debt and debtor's six dependent children).

Here, the debtor has failed to show additional circumstances indicating the existence of "a certainty of hopelessness" such that the debtor will not be able to repay the student loans in the future.  Further, the debtor has not demonstrated efforts to maximize her income or good faith attempts to repay her student loan obligations, and she has refused to consider a loan repayment program that would reduce her monthly payments to zero and would eliminate her debt in 25 years.  She has therefore failed to prove that she is entitled to an undue hardship discharge of her student loan debts under § 523(a)(8) of the Bankruptcy Code.

A separate judgment will be entered denying the debtor's request to discharge the student loans on the grounds of undue hardship.

Date: _____          _____
                                      Stephen S. Mitchell
Alexandria, Virginia                 United States Bankruptcy Judge

Copies to:

Royale Robinson
134 Clubhouse Drive SW, #301
Leesburg, VA 20175
Plaintiff *pro se*

Rand L. Gelber, Esquire
8000 Towers Crescent Dr., Ste. 1350
Vienna, VA 22182
Counsel for defendant